UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW HYOBIN KIM, et al.,

Plaintiffs,

v.

CITY OF BELMONT, et al.,

Defendants.

Case No. 17-cv-02563-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

Re: ECF Nos. 12, 24, 27

Before the Court are three motions to dismiss filed by three different groups of defendants: (1) the City of Belmont and individual city employee defendants Daniel J. Desmidt, Kenneth Stenquist, Todd Feinberg, Robert McGriff, Michael Supanich, Clyde Hussy, and Ryan Collins ("Belmont Motion"), ECF No. 12, (2) the Peninsula Humane Society ("PHS") and individual PHS employee defendant Bryan Schenck ("PHS Motion"), ECF No. 24, and (3) the County of San Mateo ("San Mateo Motion"), ECF No. 27. The Court grants and denies the motions in part as detailed below.

## I.      BACKGROUND

For the purposes of deciding these motions, the Court accepts as true the following factual allegations from Plaintiffs' First Amended Complaint ("FAC"). ECF No. 7; Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

Plaintiffs bring claims under 42 U.S.C. § 1983 and various provisions of California state law based on allegations that multiple police officers injured Plaintiffs and denied Plaintiffs their constitutional rights during an incident related to the removal of Plaintiffs' dog from their home. Plaintiffs in this action are Andrew Hyobin Kim ("Andrew"), Andrew's wife, June Kim ("June"), Andrew's brother, Paul Kim ("Paul"), and Andrew's son, Andrew Chan Kim ("Chan") (collectively "Plaintiffs"). Defendants in this action are the City of Belmont ("Belmont" or

"BPD"), the County of San Mateo ("San Mateo"), the Peninsula Humane Society ("PHS"), and individual named defendants employed by the defendant entities, including Desmidt, Stenquist, Schenck, Feinberg, McGriff, Supanich, Hussey, and Collins (collectively "Defendants").

On May 6, 2015, at approximately 4:45 p.m., Belmont Police Officer Stenquist and PHS Animal Control Officer Schenck arrived at Andrew and June's home located at 2603 Barclay Way in Belmont, California. Id. ¶ 20. The officers sought the voluntary relinquishment of Plaintiffs' pet dog, Elmo, to be impounded. Id. June stepped outside to greet the officers and closed the door behind her. Id. ¶ 19. Andrew came outside to join her a few minutes later. Id. ¶ 20. Schenck demanded first that June, and then Andrew, give up their dog to officers. Id. ¶¶ 19-20. When Andrew asked to see a court order or warrant authorizing the seizure, Schenck responded that he did not have one but would seize the dog anyway. Id. ¶ 20. After Andrew refused to relinquish Elmo, Stenquist became angry and "charged at" Andrew as he attempted to re-enter his home. Id. ¶¶ 20-21. Stenquist then removed his gun from his holster and shoved or caused June to strike the ground while outside the home. Id. June retreated to a neighbor's home for help; Andrew was eventually able to retreat inside the house. Id. Stenquist continued to intimidate the Plaintiffs by kicking the front door while waving his gun and screaming threats from outside the door. Id. ¶ 22. He pointed his gun at some of the family members and threatened their lives. Id. He continued this conduct for approximately ten minutes. Id.

Soon after, "about 4 more officers arrived," including Belmont Police Officer Supanich. Id. ¶ 23. Supanich approached the front door and asked Andrew to come outside to speak with him. Id. Andrew responded by asking to speak with a higher-level officer. Id. Supanich then forcibly "entered onto the property" and "assaulted [Andrew] and shoved him to the ground." Id. Shortly thereafter, "about 5 police officers violently and unlawfully rushed inside the home and tackled" Andrew to the ground, forcibly handcuffed him, and arrested him inside his home while beating and punching him. Id. The officers then dragged Andrew outside and continued to beat him, stepping on and breaking his glasses in the process. Id. The officers did not explain why they had arrested Andrew and did not read Andrew his Miranda rights until he was at the police station an hour later. Id.

Additionally, after entering the house, officers unlawfully remained inside, separated Chan from his father, demanded that Chan stop filming the incident, and threatened to arrest him. Id. ¶ 24. Officers then handcuffed and arrested Paul, without cause, as he exited the property from a side gate. Id. ¶ 25. The officers placed Paul in a police vehicle and released him thirty minutes later. Id.

After Andrew's arrest, officers demanded that June relinquish the Plaintiffs' dog. Id. ¶ 26. June complied, and handed over the dog, because she feared she would be arrested. Id. Plaintiffs contend they were cooperative throughout the incident but that Stenquist "lost his temper" and escalated the situation even though the dog did not bark or behave aggressively. Id. ¶¶ 28-29. Following the incident, Andrew requested a hearing with Belmont to review the decision to euthanize the dog.[1] Id. ¶ 31. Plaintiffs contend that at the hearing, which took place in May 2015, Schenck lied by stating that Andrew had violent propensities and battered police officers. Id. The city declared the dog vicious and ordered that he be euthanized and that Andrew pay the kennel costs. Id. Following the hearing, Plaintiffs filed a timely appeal on or about July 22, 2015. ECF No. 21 at 9. Despite Plaintiffs' appeal, Belmont euthanized the dog on July 22, 2015. FAC ¶ 32.

On May 4, 2017, Plaintiffs brought this suit against Defendants. ECF No. 1. Belmont had earlier initiated criminal charges for battery on a peace officer and resisting arrest against Andrew because of false allegations in a report written by Officer Feinberg who "arrived at the scene much later and so was not present during the alleged battery on a police officer." Id. ¶ 33. On May 8, 2017, the District Attorney dismissed the criminal charges against Andrew. Id.

Plaintiffs allege eleven causes of action: (1) violations of the First, Fourth, and Fourteenth Amendments through "forced entry" and "excessive force" against all Defendants under 42 U.S.C. § 1983, (2) a Monell claim against BPD and Desmidt for failure to supervise under 42 U.S.C. § 1983, (3) a claim of interference with Constitutional rights through "threats, coercion, and intimidation" under California Civil Code §§ 52 and 52.1(b) against all Defendants, (4) an assault claim against all Defendants under California Government Code § 815.2, (5) a false arrest claim

---

[1] The hearing was likely an animal control hearing under Belmont Municipal Code Chapter V, Article I, Section 5-11.

against all Defendants under California Government Code § 815.2, (6) a false imprisonment claim against all Defendants under California Government Code § 815.2, (7) a claim for violation of the duty of care and negligent infliction of emotional distress against all Defendants, (8) an invasion of privacy claim against all Defendants under California Government Code § 815.2, (9) a claim for intentional infliction of emotional distress against all Defendants, (10) a claim for malicious prosecution against all Defendants, and (11) a claim for deprivation of medical treatment against all Defendants under California Government Code §§ 845.6, 815.2. FAC ¶¶ 38-89.

Belmont and individual defendants Desmidt, Stenquist, Feinberg, McGriff, Supanich, Hussy, and Collins, filed the Belmont Motion on July 14, 2017.  ECF No. 12.  Plaintiffs filed their Opposition on July 28, 2017.  ECF No. 21.  Defendants filed their Reply on August 4, 2017.  ECF No. 29.

PHS and individual defendant Schenck filed the PHS Motion on August 1, 2017.  ECF No. 24.  Plaintiffs filed their Opposition on August 12, 2017.  ECF No. 30.  Defendants filed their Reply on August 22, 2017.  ECF No. 34.

San Mateo filed the San Mateo Motion on August 3, 2017.[2]  ECF No. 27.  Plaintiffs filed their Opposition on August 17, 2017.  ECF No. 31.  San Mateo filed their reply on August 24, 2017.  ECF No. 36.

## II.    JURISDICTION

The Court has jurisdiction over this case because the complaint brings claims under federal law, 42 U.S.C. § 1983.  28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiffs' state law claims.  28 U.S.C. § 1367(a).

## III.    JUDICIAL NOTICE

Defendants request the Court take judicial notice of the form entitled Claim for Damages Against a Public Entity ("tort claim") that Andrew filed according to Government Code §§ 910, 910.2. ECF No. 29-1 at 5.  A court may take judicial notice of documents whose contents are

---

[2] While there is some deviation, substantial portions of the San Mateo Motion contain identical text to portions in the Belmont Motion.  Compare ECF No. 27 (San Mateo Motion) with ECF No. 12 (Belmont Motion). The same is true of the Belmont and San Mateo replies.  ECF Nos. 29, 36.

1  alleged in the complaint and whose authenticity no party questions.  Branch v. Tunnell, 14 F.3d

2  449, 454 (9th Cir. 1994).  A court may also take judicial notice of documents incorporated by

3  reference in the complaint, but which are not physically attached to the pleading.  Knievel v.

4  ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

5       Plaintiffs allege in their FAC that "a proper and timely tort claim was presented to

6  [Belmont] on behalf of Plaintiff [Andrew] pursuant to Government Code § 910 et seq."  FAC ¶ 12.

7  The tort claim is relevant because it helps the Court determine if Plaintiffs satisfied the

8  requirements of the California Government Claims Act which requires the timely presentation of a

9  claim to the public entity as a prerequisite to an action for money or damages.  Cal. Gov't Code

10  § 945.4; State of California v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240-1244 (2004).  The

11  Court takes judicial notice of the tort claim because it is referenced in the FAC although it is not

12  physically attached to the pleadings.  See Knievel, 393 F.3d at 1076.

## IV.     LEGAL STANDARD

14       Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain

15  statement of the claim showing that the pleader is entitled to relief."  While a complaint need not

16  contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to

17  relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To

18  survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that,

19  when accepted as true, states a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662,

20  678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

21  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

22  Id.  While this standard is not a probability requirement, "[w]here a complaint pleads facts that are

23  merely consistent with a defendant's liability, it stops short of the line between possibility and

24  plausibility of entitlement to relief."  Id. (internal citation omitted).  In determining whether a

25  plaintiff has met this plausibility standard, a court must accept all factual allegations in the

26  complaint as true and construe the pleadings in the light most favorable to the plaintiff.  Knievel,

27  393 F.3d at 1072.

28       When a plaintiff is suing multiple defendants, the "complaint must specify exactly what

each separate defendant is alleged to have done to cause plaintiff harm." <u>Fagbohungbe v. Caltrans</u>, Case No. 13-cv-03801-WHO, 2014 WL 644008 (N.D. Cal. Feb. 19, 2014); <u>see also</u> <u>Gauvin v. Trombatore</u>, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (holding that a plaintiff "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them.").

Pro se pleadings must be liberally construed. <u>Farahani v. Floria</u>, No. 12-CV-04637-LHK, 2013 WL 1703384 at *7 (N.D. Cal. April 19, 2013); (citation omitted); <u>see also</u> <u>Balistreri v. Pacifica Police Dep't.</u>, 901 F.2d 696, 699 (9th Cir. 1990) (holding that the court "has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements.").

Finally, unless amendment would be futile, a district court should freely grant leave to amend the complaint. Fed. R. Civ. P. 15(a)(2); <u>see also</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[W]e have held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (internal citation omitted).

## V. DISCUSSION

Defendants argue that Plaintiffs fail to allege sufficient facts to support the legal theories identified in their complaint, or to sufficiently identify the particular Defendants liable for those violations. ECF Nos. 12, 24, 31.

Before proceeding to the merits of the motions, the Court notes that Plaintiffs have withdrawn their sixth and eleventh causes of action for false imprisonment and deprivation of medical treatment. ECF No. 21 at 14; ECF No. 34 at 14; ECF No. 36 at 13. Second, with the exception of certain claims, Defendants generally do not seek to dismiss claims based on alleged violations of Andrew's rights by Stenquist and Supanich. <u>See generally</u>, ECF No. 12.

### A. Civil Rights Violations under Section 1983

In their first and second causes of action, Plaintiffs allege Section 1983 civil rights

violations against all Defendants.  FAC ¶¶ 28-29.  Defendants contend that the Court should

dismiss these claims because they are not supported by the factual allegations.  ECF No. 12 at 17;

ECF No. 24 at 9; ECF No. 27 at 14.  For the purposes of this analysis, the Court will separately

analyze the Section 1983 claims against: (1) non-state actor defendants, (2) municipality

defendants, and (3) individual state actor defendants.

### 1. Non-State Actor Defendants

Plaintiffs' Section 1983 claims against PHS and Schenck fail because these parties are not

state actors.  Section 1983 deters "state actors from using the badge of their authority to deprive

individuals of their federally guaranteed rights."  Anderson v. Warner, 451 F.3d 1063, 1067 (9th

Cir. 2006) (internal citation omitted).  Plaintiffs' FAC only asserts that PHS is a "non-profit

organization" and Schenck is an employee of PHS.  FAC ¶ 4.  These allegations are insufficient to

state Section 1983 claims against these defendants.

The Court notes, however, that Schenck is alleged to have acted in concert with Belmont

police officers.  "Non-state actors . . . may be held liable under Section 1983 when they have

conspired or acted in concert with state actors to deprive a person of his civil rights."  Steel v. City

of San Diego, 726 F. Supp. 2d 1172, 1184 (S.D. Cal. 2010).  However, "[t]o prove a conspiracy

between the police and [Schenck] under § 1983, [Plaintiffs] must show 'an agreement or "meeting

of the minds" to violate constitutional rights.'"  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002)

(quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.

1989)).  "To be liable, each participant in the conspiracy need not know the exact details of the

plan, but each participant must at least share the common objective of the conspiracy."  Id.

(quoting United Steelworkers, 865 F.2d at 1541)).  To establish joint action, Plaintiffs must

establish that "private individuals are engaged in a task that is 'both traditionally and exclusively

governmental' or that 'the state has so far insinuated itself into a position of interdependence with

the private entity that it must be recognized as a joint participant in the challenged activity.'"

Burnell v. Marin Humane Soc'y, No. 14-CV-05635-JSC, 2015 WL 4089844, at *3 (N.D. Cal. July

6, 2015) (quoting Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003)).

Plaintiffs' complaint alleges only that Schenck participated in the actions described in the

complaint, without describing the nature of his or PHS' relationship to any of the government defendants. These allegations are insufficient to state Section 1983 claims against Schenck or PHS. Plaintiffs' claims against these defendants are dismissed without prejudice.

### 2. Municipality Defendants

Municipality defendants Belmont and San Mateo contend the Court should dismiss Plaintiffs' Section 1983 claims because Plaintiffs fail to plausibly allege that an official policy, pattern, or practice caused the deprivations of constitutional rights. ECF No. 12 at 23; ECF No. 27 at 17. Under Monell, a government entity may not be held liable for a Section 1983 violation unless a "policy or custom" of the entity can be shown to be a moving force behind the alleged constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

"In order to establish liability for governmental entities under Monell, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quoting Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)). A plaintiff seeking to establish Monell liability can show either: (1) an unconstitutional custom or policy behind the violation of rights, (2) a deliberately indifferent omission, such as failure to train, or (3) a final policy-maker's involvement in, or ratification of, the conduct underlying the violation. Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th. Cir. 2010).

Failure to train government employees may constitute a sufficient policy under Monell if the failure constitutes "deliberate indifference," or "reflects a 'deliberate' or 'conscious' choice" by the government entity. City of Canton v. Harris, 489 U.S. 378, 390 (1989) (citation omitted). A failure to supervise that is "sufficiently inadequate" may amount to "deliberate indifference." Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision does not give rise to a Monell claim, however – the need to train must be "obvious." Dougherty, 654 F.3d at 900. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to

train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (internal citation omitted).

In this case, Plaintiffs allege that their injuries arose because of "customs, policies, practices and/or procedures" of the Belmont Police Department that were encouraged by the City of Belmont, but offer no details to support the allegation. FAC ¶ 46. Without further factual support, this assertion does not support a Monell claim. See Sternberg v. Town of Danville, No. 15-cv-01878-SI, 2015 WL 9024340 at *5 (N.D. Cal. Dec. 16, 2015) (simply alleging "the existence of . . . a pattern or practice" only "recites the elements of a Monell claim and is plainly insufficient"). Plaintiffs do not, for example, offer any allegations as to why the claimed violations of their constitutional rights were "patently obvious" to Belmont or San Mateo as a consequence of their failure to train, or why their failure to train amounted to "deliberate indifference." See City of Canton, 389 U.S. at 390 n.10. Plaintiffs also do not explain how officials "ratified" the constitutional violations, other than through knowledge of Plaintiffs' claims against officers after the incident occurred. See Clouthier, 591 F.3d at 1249-50. Plaintiffs' FAC fails to plausibly allege the existence of any specific policy, custom, or practice by Belmont or San Mateo that would render either municipality liable under Monell. Accordingly, Plaintiffs' Section 1983 claims against both municipalities are dismissed without prejudice.

### 3.    Individual State Actor Defendants

Plaintiffs bring Section 1983 claims against individual state actor defendants, including: Feinberg, McGriff, Hussey, Collins, Supanich, and Stenquist.[3] To state a claim against an individual defendant under Section 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988) (internal citation omitted).

---

[3] Plaintiffs also bring a supervisory liability claim against Desmidt, which is discussed below.

United States District Court
Northern District of California

A plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002) (internal citation omitted). Similarly, "a police officer who is merely a bystander to his colleagues' conduct cannot be found to have caused an injury." Monteilh v. County of Los Angeles, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011). "Instead, a plaintiff must 'establish the integral participation' of the officers in the alleged constitutional violation." Id. (citing Jones, 297 F.3d at 935). "Officers are not integral participants simply by the virtue of being present at the scene of an alleged unlawful act." Id. "[I]ntegral participation requires some fundamental involvement in the conduct that allegedly caused the violation . . . . Officers are fundamentally involved in the alleged violation when they provide some affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such plan but do not object." Id. (citing Jones, 297 F.3d at 936).

A plaintiff can allege that a group of officers participated in specific conduct, however, when it is "facially plausible" that multiple individuals might partake in the conduct. Isakhanova v. Muniz, No. 15-CV-03759-TEH, 2016 WL 362397, at *4-5 (N.D. Cal. Jan. 29, 2016) (dismissing a claim because it was not "facially plausible" that twelve police officers would search a plaintiffs cell phone). If a plaintiff does not presently know facts that would tie each defendant to their unlawful conduct, the plaintiff may proceed with "Doe pleading," and amend the complaint to add Defendants once discovery clarifies their role. Id. at 5. Therefore, if Plaintiffs do not know which officer or officers took which specific actions that violated their rights, they should allege Doe pleadings by stating "Officer(s) Doe" partook in specific alleged conduct. The Court dismisses claims as specified herein where Plaintiffs failed to link specific defendants to specific conduct or utilize Doe pleading.

### a. First Amendment Claim

Plaintiffs plead a violation of their First Amendment rights under Section 1983. FAC ¶ 28. The "First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). To establish a

Section 1983 First Amendment claim, a plaintiff must: (1) show that she engaged in a constitutionally protected activity; (2) show that the defendant's retaliatory action caused her to suffer an injury that would likely deter a person of ordinary firmness from engaging in that protected activity; and (3) must ultimately prove that the defendants' desire to cause the chilling effect was a but-for cause of defendants' action. Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900-901 (9th Cir. 2008). A plaintiff must also show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action. Hartman, 250 U.S. at 259.

Plaintiffs do not articulate with sufficient particularity how each defendant prevented each plaintiff from engaging in a constitutionally protected free speech activity. Most of the interaction between the Plaintiffs and Defendants resulted from the officers physically subduing Plaintiffs, not limiting their speech. The only Plaintiff who appears to have a potential First Amendment claim is Chan, because Plaintiffs state in their FAC that "officers . . . demand[ed] [Chan] stop filming" the incident and then "threatened to have [Chan] arrested without any probable cause of wrongdoing." See FAC ¶ 24. Filming is constitutionally protected free speech and the alleged threat from the officer(s) may have been aimed at chilling the speech of an ordinary person, at least for the purposes of pleading at this stage. Fordyce v. City of Seattle, 55 F.3d 436, 442 (9th Cir. 1995). But while Chan appears to present facts supporting a First Amendment claim, he does not specify which officer or officers did the acts constituting this claim, so Plaintiffs must amend their complaint to specify which officers demanded Chan stop filming and threatened him. See Isakhanova, 2016 WL 362397, at *4-5. If Plaintiffs do not know which officers demanded Chan stop filming and threatened him, then Plaintiffs should plead that "Officer(s) Doe" demanded he stop filming and threatened him. Plaintiffs' First Amendment claims against all Defendants are dismissed without prejudice.

### b.    Fourth Amendment Claim

Plaintiffs also plead violations of their Fourth Amendment rights under Section 1983. FAC ¶ 28. The Fourth Amendment protects against unreasonable searches and seizures. Cty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1997); Graham v. Connor, 490 U.S. 386, 394 (1989).

Fourth Amendment claims may also involve claims for use of excessive force analyzed under an objective reasonableness standard. Scott v. Harris, 550 U.S. 372, 381 (2007). To determine reasonableness under the Fourth Amendment, courts consider the totality of the circumstances. Graham, 490 U.S. at 396. First, courts look at the severity of the intrusion based on "the type and amount of force inflicted." Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003). Second, courts evaluate the government's interest based on (1) the "severity of the crime," (2) whether the suspect posed an immediate threat to the officers' or public safety, and (3) whether the suspect was resisting arrest or attempting to escape. Graham, 490 U.S. at 396. Finally, courts "balance the gravity of the intrusion against the government's need for that intrusion." Miller, 340 F.3d at 964. Here, some plaintiffs successfully plead Fourth Amendment claims against some defendants.

First, Andrew successfully pleads a Fourth Amendment claim against Stenquist based on the allegations that Stenquist "charged at" Andrew, kicked the door, waved his gun, threatened Andrew, forcibly entered the home, and assaulted Andrew. See FAC ¶¶ 21-23. Andrew also successfully pleads a Fourth Amendment claim against Supanich based on the allegations that he "forcibly and wrongfully" opened their door, entered their home and assaulted Andrew. See FAC ¶ 23. Andrew alleges that "about 5 police officers violently and unlawfully rushed inside the home and tackled [Andrew] to the ground." Id. These five officers appear to be Supanich and Stenquist along with McGriff, Hussey, and Collins who are all listed on the police report. See ECF No. 21 at 14-15. Moreover, unlike in Isakhanova, where the court dismissed claims against three specifically named defendants because it was not plausible that all three carried out the violating acts of searching her cell phone, here it is plausibly alleged that all five officers entered the house without consent and collectively beat Andrew. 2016 WL 362397, at *4-5. Therefore, Andrew successfully pleads Fourth Amendment claims against Stenquist, Supanich, McGriff, Hussey, and Collins.

Second, June successfully pleads a Fourth Amendment claim against Stenquist based on the allegation that he shoved her onto the ground multiple times during their encounter. See FAC ¶ 21.

Third, Chan and Paul successfully plead Fourth Amendment claims against Stenquist

12

based on the allegation that he waved his gun around and threatened them as they watched from inside their residence.  FAC ¶¶ 21-22.

Fourth, Paul does not successfully plead a Fourth Amendment claim against other officers for his arrest and detention because he does not properly plead which officers took part in his detention.  Paul only alleges that "the officers unlawfully handcuffed and arrested him without probable cause of wrongdoing."  FAC ¶ 25.  Paul must either identify which officer or officers arrested and handcuffed him, or if he does not know, Paul should plead that "Officer(s) Doe" handcuffed and arrested him until he can identify the particular officers through discovery.  See Isakhanova, 2016 WL 362397, at *4-5.  The Court dismisses Paul's Fourth Amendment claim against these officers without prejudice.

The Court dismisses without prejudice all of Plaintiffs' other Fourth Amendment claims not specifically identified herein.

### c.      Fourteenth Amendment Claim

Finally, Plaintiffs plead a violation of their Fourteenth Amendment rights under Section 1983.  FAC ¶ 39.  The Fourteenth Amendment protects persons from being deprived of "life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  Plaintiffs cite multiple rights they believe are protected by the Fourteenth Amendment, including "the right to be free from government conduct and/or exercise of discretion by government official that is in retaliation and response to the exercise of free speech; the right to be free from unreasonable searches and/or seizures; the right to be free from the use of unlawful and/or unreasonable force; the right to be free from unlawful threats of force or arrest and intimidation; and the right to be free from outrageous government conduct."  FAC ¶ 39.

Most of the rights cited by Plaintiffs are covered by their First Amendment and Fourth Amendment claims and are properly addressed in those claims.  See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment . . . must be the guide for analyzing these claims.") (internal citation omitted).  The right Plaintiffs cite most closely associated with the Fourteenth Amendment is a claim against outrageous government

13

conduct. See FAC ¶ 39. Claims for outrageous government conduct, however, only pertain to criminal cases and are no longer viable except in the most extreme cases. See United States v. Russell, 411 U.S. 423 (1973). Therefore, the Court dismisses without prejudice all of Plaintiffs' Fourteenth Amendment claims.

### d.  Supervisory Liability Claim

Plaintiffs also assert claims against Desmidt in his capacity as police chief, as well as "any supervisors that failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise them." Id. ¶ 42. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Id. Supervisors may be liable "under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal citation omitted). "A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor can be liable . . . for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1208 (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)).

Plaintiffs do not state sufficient facts to support a supervisory liability claim against Desmidt or any other supervisors. Plaintiffs allege only that Desmidt was the Chief of Police for Belmont and acted within the course of his employment throughout the duration of the incident. FAC ¶ 5. The complaint fails to state how specific actions, attributed to Desmidt as the Chief of Police, constituted participation in the violation of Plaintiffs' civil rights.

Further, claims against Desmidt in his official capacity are the same as those against Belmont. Official-capacity suits "generally represent only another way of pleading an action

against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n. 55. "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008). The Court dismisses Plaintiffs' claims against Desmidt in his supervisory role without prejudice.

## B.    State Law Violations

In addition to the Section 1983 claims, Plaintiffs allege nine claims under California state law against all Defendants. FAC ¶¶ 50-89. As discussed previously, Plaintiffs have withdrawn the sixth and eleventh causes of action for false imprisonment and deprivation of medical treatment. ECF No. 21 at 14; ECF No. 34 at 14; ECF No. 36 at 13. The Court will first address Defendants' assertion that certain Plaintiffs did not comply with the notice requirements of the California Government Claims Act. The Court will then address the remaining seven California state law claims.

### 1.    California Government Claims Act

In relation to Plaintiffs' third through eleventh claims, the state actor defendants[4] assert that June, Paul, and Chan have not adequately complied with the California Government Claims Act. ECF No. 12 at 26. California Government Code § 945.4 requires the timely presentation of a claim to the public entity as a prerequisite to an action for money or damages. Cal. Gov't Code § 945.4; Fall River Joint Unif. Sch. Dist. v. Sup. Court, 206 Cal. App. 3d 431, 434 (1998); Robinson v. Alameda Cty., 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012). In federal court, failure to allege facts that show compliance with the Government Claims statutes subjects a state law claim to dismissal. Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).

The purpose of the California Government Claims Act is "to reasonably enable the public

---

[4] State actor defendants include all defendants other than PHS and Schenck. PHS is a non-profit and Schenck is an employee of PHS. See ECF No. 24; ECF No. 27 at 10 n.2; ECF No. 29 at 12 n.1; ECF No. 31 at 7. Plaintiffs are not required to satisfy the California Government Claims Act in relation to these non-state actor defendants. However, the state law claims which are dismissed against the state defendants for failure to file notice of claims (Paul's allegation that he was arrested and detained in the cop car and Andrew's that Feinberg filed a false report against him) do not involve non-state actors.

entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." <u>City of San Jose v. Sup. Court</u>, 12 Cal. 3d 447, 456 (1974).  The claim must include: (1) the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted, (2) a general description of the injury, damages, or loss incurred, and (3) the name or names of the public employee or employees causing the injury, if known. <u>Blair v. Sup. Court</u>, 218 Cal. App. 3d 221, 224 (1990).  "As long as these general elements are present, it is not necessary that the claim comply with formal pleading standards." <u>Id.</u>  The statutory bar applies where the lawsuit "patently attempts to premise liability on an entirely different factual basis than what was set forth in the tort claim." <u>Cook v. Cty. of Contra Costa</u>, No. 15-CV-05099-TEH, 2016 WL 913395, at *4 (N.D. Cal. Mar. 10, 2016) (finding government tort claims act barred lawsuit for medical negligence treating injury from slip and fall where claim only alleged the slip and fall itself).  "The statutory bar therefore applies only to a complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons." <u>K.T. v. Pittsburg Unif. Sch. Dist.</u>, 219 F. Supp. 3d 970, 981 (N.D. Cal. 2016) (internal citation omitted).

For example, in <u>Lacy v. City of Monrovia</u>, the police entered a family's home and the husband filed a claim on behalf of the entire family in relation to the forced intrusion.  44 Cal. App. 3d 152, 155 (1974).  The court concluded the wife's claim in a subsequent lawsuit was not barred even though she did not submit a claim on her own behalf because the husband's claim incorporated her injuries.  <u>Id.</u>  According to the court, the "fact that appellant did not sign a separate claim form is of no consequence. . . . It is clear that [the husband] presented the claim to respondent on his own behalf and on the behalf of his wife and children." <u>Id.</u>  In contrast, a court applied the statutory bar where a mother's claim only discussed wrongful death injuries suffered by her son's estate when he died, but a later lawsuit also sought redress for her son's injuries before he died (negligence, assault and battery).  <u>See</u> <u>Nelson v. Cty. of Los Angeles</u>, 113 Cal. App. 4th 783, 796 (2003).

Defendants argue the Court should dismiss June, Paul, and Chan's state claims in total due to failure to comply with the notice requirement in the California Government Claims Act because

Andrew is the only formally listed claimant.  ECF No. 12 at 26.  Under the foregoing law, this

argument is not persuasive.  The Court concludes that the claim submitted by Andrew sufficiently

included claims alleged by Andrew, June, Chan, and Paul because it discussed those claims as a

factual matter.  ECF No. 29-1 at 5.  That Andrew is the only person formally listed as a

complainant does not mean that the claims did not put the state Defendants on notice of the claims

raised by this group of plaintiffs.  See Lacy, 44 Cal. App. 3d at 155.

Putting to one side the question of *as to whom* the claims were raised, there is a separate

question as to *which* factual claims were raised.  The claim submitted by Andrew does not raise all

of the facts alleged in the FAC as state law claims.  A fair reading of Andrew's claim shows that it

includes the following facts upon which state law claims in the FAC are based:

(1) Stenquist charged at Andrew, FAC ¶ 21;

(2) Stenquist pushed June to the floor twice, FAC ¶ 21;

(3) Stenquist waved his gun at, and threatened to arrest, Paul, Chan, and Andrew, FAC

¶ 21-22;

(4) Suapnich forced open Andrew's door and assaulted Andrew, FAC ¶ 23; and

(5) Five officers[5] beat and arrested Andrew, FAC ¶ 23.

ECF No. 29-1 at 5.  Andrew's claim does not cover Paul's allegation in the FAC that he was

arrested and detained in a police car.  FAC ¶ 25.  Likewise, the claim does not cover Andrew's

allegation in the FAC that Feinberg filed a false report against him.  Id. ¶ 33.  It is a closer call

whether the claim includes Chan's allegation that officers threatened to arrest him in retaliation for

his videotaping.  The claim states that "my brother and son met me behind the front door and

began recording Stenquist as he continued to point his gun at us through the front door window,

yell and kick at the door while threatening to have us all arrested if we did not come outside."

ECF No. 29-1 at 5.  The FAC alleges that "[a]fter wrongfully entering the house, the officers

unlawfully remained inside separating [Chan] from his father and demanding that he stop filming.

The police officer illegally threatened to have [Chan] arrested."  FAC ¶ 24.  The Court concludes

---

[5] While the FAC alleges five officers, Andrew's claim alleges three.  FAC ¶ 23; ECF No. 29-1 at
5.  This fact is sufficiently close to the put state defendants on notice of Andrew's claims.

United States District Court
Northern District of California

that Andrew's claim did not put the state on adequate notice that Chan would bring a claim in the FAC for infringement of his First Amendment rights. While the claim discusses the fact of Chan's recording, and the police's conduct in threatening arrests, the claim does not make clear that Chan was threatened while inside the house after being told to stop filming. Accordingly, the Court concludes that Andrew's claim also did not cover Chan's allegation in the FAC that officers threatened to arrest him for filming the incident. These three claims are dismissed against state defendants with prejudice because the California Tort Claims Act requires a party to submit their claim to the entity no later than six months after the cause of action accrued, and that deadline has passed. Cal. Gov't Code §§ 905, 911.2, 945.2, 950-950.2.

### 2. State Law Claims[6]

#### a. Third Cause of Action: Section 52.1

Moving to the individual state law claims, Plaintiffs assert the third cause of action for violent threats and intimidation in violation of California Civil Code § 52.1 against all Defendants. Section 52.1 prohibits interference or attempted interference with a plaintiff's Constitutional rights through the use of threats, intimidation or coercion. Cal. Civ. Code § 52.1(a); Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007). To state a claim under Section 52.1, a plaintiff must plead facts showing violence or intimidation by threat of violence by the accused defendant. Cabesuela v. Browning-Ferris Indus., 68 Cal. App. 4th 101, 111 (1998). "Speech alone is insufficient . . . [unless] the speech itself . . . threatens violence" and places the victim in reasonable fear of violence. Cal. Civ. Code § 52.1(j). In sum, to state a claim, Plaintiffs must plead facts showing that the defendant threatened or enacted violence against a plaintiff as a consequence of the plaintiff exercising or attempting to exercise a right protected by the constitution.

Andrew, Chan, and Paul state a claim against Stenquist because Stenquist waved his gun and threatened arrest as a consequence of refusing to relinquish their dog without a warrant. FAC

---

[6] The FAC does not state any state law violating actions by PHS, nor any source of liability for PHS for the state law claims. Moreover, no state law claim against Schenck survives. Schenck and PHS are also not liable for Section 1983 claims as they are not state actors. Accordingly PHS and Schenck are dismissed from the complaint in its entirety without prejudice.

¶ 21-22; <u>see</u> <u>Fuller v. Vines</u>, 36 F.3d 65, 68 (9th Cir. 1994), <u>as amended on denial of reh'g and reh'g en banc</u> (Nov. 23, 1994), <u>overruled on other grounds by</u> <u>Robinson v. Solano Cty.</u>, 278 F.3d 1007 (9th Cir. 2002) (holding that seizure and killing of dog is a cognizable claim under the Fourth Amendment).  But Plaintiffs do not state a Section 52.1 claim against any other defendant and those claims are dismissed without prejudice.  Plaintiffs may amend their complaint to allege a Section 52.1 claim against any Defendant, but Plaintiffs are limited to the facts raised in Andrew's tort claim as to the state defendants.

### b. Fourth Cause of Action: Assault and Battery[7]

An assault is "a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present."  <u>Lowry v. Standard Oil Co. of Cal.</u>, 63 Cal. App. 2d 1, 6-7 (1944).  Words alone do not amount to an assault.  <u>Tromblinson v. Nobile</u>, 103 Cal. App. 2d 266, 269 (1951).  To plead a claim for assault, Plaintiffs must plead facts showing that a defendant acted with intent to cause harmful or offensive contact, or threatened to touch a plaintiff in a harmful or offensive manner, the plaintiff reasonably believed he was about to be touched or the threat would come to pass, the plaintiff did not consent and was harmed, and defendant's act was a substantial factor in that harm.  <u>So v. Shin</u>, 212 Cal. App. 4th 652, 668-69 (2013).

Battery "is any intentional, unlawful and harmful contact by one person with the person of another."  <u>Ashcraft v. King</u>, 228 Cal. App. 3d 604, 611 (1991).  Claims of battery against a police officer require a plaintiff to show the officer used unreasonable force.  <u>Edson v. City of Anaheim</u>, 63 Cal. App. 4th 1269 (1998).  To plead a claim for battery, Plaintiffs must plead facts showing that a defendant touched a plaintiff with the intent to harm or offend, that the plaintiff did not consent and was harmed, and that a reasonable person would feel offended.  <u>So</u>, 212 Cal. App. 4th at 669.

---

[7] As to the municipalities, Belmont and San Mateo, there is a separate and additional reason to dismiss the tort claims (assault and battery, false arrest, negligence, invasion of privacy, IIED, and malicious prosecution).  To hold a state actor liable for torts, a plaintiff must identify a statute as the basis for his claim.  <u>See</u> Cal. Gov't Code, § 815(a); <u>Eastburn v. Reg'l Fire Prot. Agency</u>, 31 Cal. 4th 1175, 1179-80 (2003).  Plaintiffs do not assert statutory authority for the tort claims against the municipalities and are instructed to do so upon amendment.

Andrew states a claim against Stenquist for charging at him. FAC ¶ 21. June states a claim against Stenquist for pushing her to the ground twice. Id. Andrew, Paul and Chan do not state a claim against Stenquist for waving his gun and threatening arrest because Plaintiffs must show that the police officer used unreasonable force. Id. ¶ 22; Edson, 63 Cal. App. 4th 1269. Andrew states a claim against Stenquist, Supanich, McGriff, Hussey, and Collins for beating him. FAC ¶ 23. But Plaintiffs do not state assault claims against any other defendant and those claims are dismissed without prejudice. Plaintiffs may amend the complaint to allege an assault or battery claim against any Defendant but are limited to the facts in Andrew's tort claim as to the state defendants.

### c.      Fifth Cause of Action: False Arrest

False arrest is the unlawful violation of another's personal liberty. Fermino v. Fedco Inc., 7 Cal. 4th 701 (1994). To state a claim for false arrest, Plaintiffs must state facts which show that a defendant arrested a plaintiff without process, and imprisoned and damaged that plaintiff. Cervantez v. J. C. Penney Co., 24 Cal. 3d 579, 592 (1979). Andrew states a claim against the five officers for arresting him without probable cause, FAC ¶ 23, but does not state a false arrest claim against any other defendant, and those claims are dismissed without prejudice. Plaintiffs may amend the complaint to allege a false arrest claim against any Defendant but are limited to the facts in Andrew's tort claim as to the state defendants.

### d.      Seventh Cause of Action: Negligence

Plaintiffs assert a seventh cause of action for negligence against each Defendant. The elements of a negligence claim are "duty to use due care and breach of duty, which proximately causes injury." Lopez v. City of Los Angeles, 196 Cal. App. 4th 675, 685 (2011). "Absent a legal duty, any injury is an injury without actionable wrong." J.L. v. Children's Inst., Inc., 177 Cal. App. 4th 388, 396 (2009). "The existence of a duty of care is a question of law to be determined by the court alone." Parsons v. Crown Disposal Co., 15 Cal. 4th 456, 472-73 (1997).

Andrew states a claim for negligence against Stenquist for charging at him. FAC ¶ 21. June states a claim against Stenquist for pushing her twice. Id. Andrew, Paul, and Chan state a claim against Stenquist for waving his gun and threatening their arrest. Id. ¶ 22. Andrew states a

claim against Stenquist, Supanich, McGriff, Hussey, and Collins for beating him.  Id. ¶ 23. But Plaintiffs do not state negligence claims against any other defendant and those claims are dismissed without prejudice.  Plaintiffs may amend the complaint to allege a negligence claim against any Defendant but are limited to those facts in the claim as the state defendants.

### e.        Eighth Cause of Action: Invasion of Privacy

Plaintiffs assert an eighth cause of action for invasion of privacy against all Defendants. Invasion of privacy has two elements: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person."  Shulman v. Grp. W Prods., Inc., 18 Cal. 4th 200, 231 (1998) (internal citations omitted).  To prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff.  Id.  Andrew, Chan, Paul, and June state claims against Stenquist, Supanich, McGriff, Hussey, and Collins for entering their home offensively. FAC ¶¶ 22, 23.  But Plaintiffs do not state assault claims against any other defendant and those claims are dismissed without prejudice.  Plaintiffs may amend the complaint to allege an invasion of privacy claim against any Defendant but are limited to those facts in the claim as to the state defendants.

### f.        Ninth Cause of Action: Intentional Infliction of Emotional Distress

Plaintiffs assert a ninth cause of action for intentional infliction of emotional distress ("IIED") against all Defendants.  "The elements of a prima facie case of intentional infliction of mental distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress."  Aquino v. Superior Court, 21 Cal. App. 4th 847, 856 (1993).  "In evaluating whether the defendant's conduct was outrageous, it is 'not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'"  Cochran v. Cochran, 65 Cal. App. 4th 488, 496 (1998) (quoting (Restatement

(Second) of Torts § 46, cmt. d). Outrageous conduct is defined as "so extreme as to exceed all bounds of that usually tolerated in a civilized community." <u>Davidson v. City of Westminster</u>, 32 Cal. 3d 197, 209 (1982).

In <u>Davidson</u>, for example, the plaintiff was stabbed in a public laundromat that was under police surveillance. There had been a similar assault in the laundromat the previous evening while the officers were conducting their surveillance, and on the evening plaintiff was attacked, the officers saw the victim in the laundromat, and they also saw a man who they identified as the likely perpetrator of the previous assault enter and leave the premises several times. However, the officers did not warn the victim and failed to intervene until the stabbing occurred. The California Supreme Court affirmed the dismissal of the Plaintiff's IIED claim. The court concluded that where police officers "acted in reckless disregard of the potential for harm . . . the officers' conduct did not rise to the level of outrageous conduct." <u>Id.</u> at 210. The Court noted that the officers "started as mere observers and the sum and substance of the criticism directed against them is that they remained such far too long and were late in becoming active participants." <u>Id.</u> On those facts, "[a]bsent an intent to injure, such inaction is not the kind of extreme and outrageous conduct that gives rise to liability under the intentional infliction of emotional distress tort." <u>Id.</u> (internal citation omitted)

Andrew, Paul, and Chan's claim that Stenquist pointed a gun at them while "kick[ing] violently at the door and . . . threatening their lives," ECF No. 7 at ¶ 22, adequately alleges a claim for IIED. Defendants' motion as to this claim is denied. Andrew's claim that officers "tackled [him] to the ground . . . while beating his body and punching him," then "dragg[ing] him outside and continu[ing] to beat him," <u>id.</u> ¶ 23, also states a claim for IIED, but Andrew does not specify which specific officers participated in this conduct. Defendants' motion as to these claims are granted without prejudice.[8] While the remaining allegations in Plaintiffs' complaint are troubling, they do not rise to the level of outrageousness necessary to plead a claim for IIED, and motions to these remaining allegations are dismissed without prejudice. Plaintiffs may amend the complaint

---

[8] All of the conduct just described from paragraphs 22 and 23 is also set forth in Andrew's Government Claims Act claim. <u>See</u> ECF No. 29-1.

to allege an IIED claim against any Defendant but are limited to those facts in the claim as to the state defendants.

### g. Tenth Cause of Action: Malicious Prosecution

Plaintiffs assert a tenth cause of action for malicious prosecution. FAC ¶ 85. Plaintiffs allege that Andrew was a victim of malicious prosecution because of "false allegations" written in the police report by Feinberg. Id. This claim is dismissed with prejudice, however, because Andrew failed to include these factual allegations in his tort claim.

### C. Declaratory and Injunctive Relief

In addition to monetary damages, Plaintiffs seek "declaratory and injunctive relief" against Belmont, prohibiting officers from unlawfully interfering with the rights of Plaintiffs and prohibiting future unlawful search and seizure. FAC ¶ 49. Plaintiffs do not plead facts that justify injunctive relief in this case.

The Supreme Court disfavors this type of equitable relief. The Court has held that "recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers . . . in the absence of irreparable injury which is both great and immediate." City of Los Angeles v. Lyons, 461 U.S. 95, 112 (1983). Under the Court's "traditional approach to deciding what remedies are available for violation of a federal right," damages are the default—and equitable relief the exception—for "it is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief." Franklin v. Gwinnett Cty. Pub. Sch., 503 U.S. 60, 75-76 (1992). Declaratory relief should seek to resolve prospective disputes and should not be sought to correct past wrongs where other remedies exist. United States v. Washington, 759 F.2d 1353, 1356-57 (9th Cir. 1983) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.").

Plaintiffs fail to plead facts that show that the conduct they allege is likely to recur. See Lyons, 461 U.S. at 103. Further, Plaintiffs do not plead facts that demonstrate an economic remedy would be inadequate to recover damages. Franklin, 503 U.S. at 76. Without a threat of

future harm, and with an adequate remedy at law, Plaintiffs do not need equitable relief to ensure protection of their rights. The Court grants Defendants' motions to dismiss Plaintiffs' claims for equitable relief without prejudice, but cautions Plaintiffs that it will be difficult to plead an entitlement to injunctive relief on these facts.

### D.     Leave to Amend

When dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995). In light of Plaintiffs' pro se status, the Court grants Plaintiffs leave to amend unless otherwise noted. The claims dismissed with prejudice, without leave to amend, include Andrew's malicious prosecution claim against Feinberg, Chan's state claims for interference with his right to film, and Paul's state claims for false arrest.

The Court encourages Plaintiffs to seek assistance in filing the amended complaint. One source of assistance may be the Legal Help Center, which is located at 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, California, and in Oakland at 1301 Clay Street, 4th Floor, Room 470S, Oakland, California. Assistance is provided by appointment only. A litigant may schedule an appointment by signing up in the appointment book located on the table outside the door of the Center or by calling the Legal Help Center appointment line at (415) 782-8982. Plaintiffs may also wish to consult the Northern District of California manual, Representing Yourself in Federal Court: A Handbook for Pro Se Litigants, a copy of which may be downloaded at http://www.cand.uscourts.gov/prosehandbook or obtained free of charge from the Clerk's office.

### CONCLUSION

As set forth above, the Court rules as follows on these motions.

For Section the 1983 claims:

(1) The First Amendment claim is dismissed with leave to amend.

(2) The Fourth Amendment claim: Andrew states a claim against Stenquist on the basis that Stenquist charged at Andrew, kicked at the door, waved his gun, and assaulted Andrew. FAC ¶ 21-23. Andrew also states a claim against Supanich on basis that Supanich forced open the door,

entered the home, and assaulted Andrew.  Id. ¶ 23.  Andrew also states a claim that five officers (Stenquist, Supanich, McGriff, Hussey, and Collins) rushed into his home, tackled and beat him. Id.  June states a claim against Stenquist for shoving her to the ground twice.  Id. ¶ 21.  Paul and Chan state a claim against Stenquist on the basis that he waved his gun and threatened arrest.  Id. ¶ 21-22.  The claim is otherwise dismissed with leave to amend.

(3) The Fourteenth Amendment claim is dismissed with leave to amend.

For the state law claims:

(4) The Section 52.1 claim:  Andrew, Chan, and Paul state a claim against Stenquist for waving his gun and threatening arrest.  Id. ¶ 21-22.  The claim is otherwise dismissed.  Plaintiffs may amend the complaint to allege a Section 52.1 claim against any Defendant but are limited to those facts in the California Government Claims Act claim as to the state defendants.

(5) The assault and battery claim:  Andrew states a claim against Stenquist for charging at him.  Id. ¶ 21.  June states a claim against Stenquist for pushing her twice.  Id.  Andrew states a claim against the five officers for beating him.  Id. ¶ 23.  The claim is otherwise dismissed. Plaintiffs may amend the complaint to allege an assault or battery claim against any Defendant but are limited to those facts in the California Government Claims Act claim as to the state defendants.

(6) The false arrest claim:  Andrew states a claim against the five officers.  Id.  The claim is otherwise dismissed.  Plaintiffs may amend the complaint to allege a false arrest claim against any Defendant but are limited to those facts in the California Government Claims Act claim as to the state defendants.

(7) The negligence claim:  Andrew states a claim against Stenquist for charging at him.  Id. ¶ 21.  June states a claim against Stenquist for pushing her twice.  Id.  Andrew, Paul, and Chan state a claim against Stenquist for waving his gun and threatening their arrest.  Id. ¶ 22. Andrew states a claim against the five officers for beating him.  Id. ¶ 23. The claim is otherwise dismissed. Plaintiffs may amend the complaint to allege a negligence claim against any Defendant but are limited to those facts in the California Government Claims Act claim as the state defendants.

(8) The invasion of privacy claim:  Andrew, Chan, Paul, and June allege claims against

Stenquist, Supanich, McGriff, Hussey, and Collins for entering their home offensively.  Id. ¶ 22, 23.  The claim is otherwise dismissed.  Plaintiffs may amend the complaint to allege an invasion of privacy claim against any Defendant but are limited to those facts in the California Government Claims Act claim as to the state defendants.

(9) The IIED claim:  Andrew, Paul, and Chan allege claims against Stenquist regarding his pointing a gun at them and threatening their lives.  The claim is otherwise dismissed.  Plaintiffs may amend the complaint to allege an IIED claim against any Defendant but are limited to those facts in the California Government Claims Act claim as to the state defendants.

(10) The malicious prosecution claim:  The claim is dismissed in its entirety.  No plaintiff states a claim for malicious prosecution.  Plaintiffs may amend the complaint to allege a malicious prosecution claim against any Defendant but are limited to those facts in the claim.

Plaintiffs' claims for equitable relief are dismissed without prejudice.

Plaintiffs may file an amended complaint within 21 days of this order that addresses the deficiencies identified above.  If they do not file an amended complaint, the Court will assume that Plaintiffs are proceeding only on the claims as to which Defendants' motions to dismiss were denied.

IT IS SO ORDERED.

Dated:  January 22, 2018

_____
JON S. TIGAR
United States District Judge