UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW HYOBIN KIM, et al., <br> Plaintiffs, <br> v. <br> CITY OF BELMONT, et al., <br> Defendants. | Case No. 17-cv-02563-JST <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS** <br><br> Re: ECF Nos. 54, 55 |

## I. INTRODUCTION

Before the Court are two motions to dismiss Plaintiffs' Second Amended Complaint ("SAC"). ECF No. 53. Defendants City of Belmont, Daniel Desmidt, Kenneth Stenquist, Todd Feinberg, Robert McGriff, Michael Supanich, Clyde Hussey, Ryan Collins, and the County of San Mateo (collectively "the City and County Defendants"), filed one motion to dismiss. ECF No. 54. Defendants Peninsula Humane Society ("PHS") and Brian Schenck, filed another motion to dismiss. ECF No. 55. The Court grants the motions in part and denies them in part as set forth below.

## II. BACKGROUND

For the purposes of deciding these motions, the Court accepts as true the factual allegations from Plaintiffs' SAC. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Plaintiffs also attached several exhibits and a declaration to their opposition to the City and County Defendants' motion to dismiss, but did not request judicial notice of these materials. ECF Nos. 57-1, 57-2, 57-3, 57-4. The Court nonetheless takes judicial notice of two relevant exhibits because those documents are in the public record – namely, the misdemeanor complaint filed against Andrew Kim by the County of San Mateo, and the attached police report. ECF No. 57-2; *Lee v. City of*

*Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of matters of public record.") (internal quotations and citation omitted). The Court will also take judicial notice of Andrew's tort claim under the California Government Claims Act, Cal. Gov't Code § 945.4, ECF No. 29-1, as it did in its previous order on Defendants' motions to dismiss Plaintiffs' First Amended Complaint. ECF No. 52 at 5.

Plaintiffs bring claims under 42 U.S.C. § 1983 and various provisions of California state law based on allegations that multiple police officers injured Plaintiffs and denied Plaintiffs their constitutional rights during an incident related to the removal of Plaintiffs' dog from their home. Plaintiffs in this action are Andrew Hyobin Kim ("Andrew"), Andrew's wife, June Kim ("June"), Andrew's brother, Paul Kim ("Paul"), and Andrew's son, Andrew Chan Kim ("Chan") (collectively "Plaintiffs"). Defendants in this action are Belmont, San Mateo, PHS, and individuals employed by the defendant entities, namely Desmidt, Stenquist, Schenck, Feinberg, McGriff, Supanich, Hussey, and Collins, as well as unknown Officers Doe.

On May 6th, 2015, at approximately 6:40 p.m., Belmont Police Department ("BPD") Officer Stenquist and PHS Officer Schenck met at a Belmont fire station. ECF No. 53 ¶ 21. There, the two officers discussed their plan to seek the Plaintiffs' consent to impound the Plaintiffs' dog.[1] *Id.* In BPD's database at the time, Plaintiffs' home was flagged as "anti-police" and associated with a vandalism arrest. *Id.* ¶ 22. Fifteen minutes later, Schenk and Stenquist arrived at Plaintiffs' home and spoke with June and Andrew outside of the home. *Id.* ¶¶ 23-24. Andrew did not consent to impounding the dog, but Schenck and Stenquist demanded that he hand over the dog anyway. *Id.* ¶ 25.

When Andrew turned to walk back into the home, Stenquist charged towards him. Because June stood between the officers and Andrew, Stenquist grabbed June's wrist behind her back and shoved her or otherwise caused June to strike the ground twice. *Id.* ¶ 25-26. Stenquist then drew his firearm and pointed it at Andrew and June. *Id.* ¶ 26. Andrew entered the home and got behind the front door while June ran to the neighbor's home for help. *Id.* Stenquist kicked at

---

[1] The SAC does not state what reason the officers had for wanting to impound Plaintiffs' dog.

1 the door. *Id.* Schenck did nothing to intervene. *Id.*

2 BPD Officers Feinberg and McGriff arrived shortly thereafter, also did not intervene, and encouraged Stenquist's conduct. *Id.* ¶ 28. McGriff placed a hand on his holster, pointed his finger, and shouted at Plaintiffs that they had no choice and must allow officers to enter the house. *Id.*

Paul left the home by the side gate and filmed the incident on his camera phone. *Id.* ¶ 29. Feinberg pointed his firearm at Paul and demanded that he raise his hands. *Id.* Paul complied. *Id.* Feinberg, McGriff and Officers Doe ordered Paul to place his camera phone on top of a recycling bin, and Officers Doe handcuffed Paul, searched him "invasively," and arrested him "because he was filming the officers." *Id.* The officers placed Paul in the back of a police cruiser for about half an hour. *Id.*

BPD Officers Supanich, Hussey, and Collins also arrived and failed to intervene. *Id.* ¶ 30. Supanich demanded that Andrew open the door. *Id.* ¶ 31. When Andrew did so, Supanich forcefully entered the home and assaulted Andrew. *Id.* ¶ 32. Officers Doe also entered the home, hit Andrew's phone from his hand "so that he could not film the officers," and forcibly handcuffed and arrested him "while beating at his body." *Id.* The officers "pulled" Andrew outside of the home, continued to apply excessive force, stomped on his glasses, and handcuffed, searched, and arrested him. *Id.*

Officers Doe demanded that Chan stop filming, and threatened to have him arrested. *Id.* ¶ 33. Schenck and Officers Doe demanded that June relinquish the dog, and she did so under duress. *Id.* ¶ 34. Defendants later held a hearing where they declared the dog vicious, ordered it euthanized, and ordered Andrew to pay kennel costs. *Id.* ¶ 37.

San Mateo charged Andrew with battery on a police officer and resisting arrest. *Id.* ¶ 38. Feinberg wrote the police report underlying Andrew's charges "based on a false allegation and containing perjured testimony" by Stenquist, Schenck, and Supanich, and approved by Hussey. *Id.* During the investigation for this charge, Officers Doe painfully handcuffed Andrew and denied him access to a translator. *Id.* On May 8, 2017, San Mateo dismissed their charges against Andrew. *Id.*

3

Andrew filed a tort claim against Belmont under the California Tort Claims Act. The claim alleged that: Schenck and Stenquist demanded that Andrew and June hand over the dog; Stenquist shoved June to the ground; Stenquist charged at Andrew with his firearm pointed; Stenquist kicked at the front door, threatened arrest, and pointed his gun at Andrew, Chan, and Paul; three officers charged into the house, knocked Andrew's cell phone away, tackled him to the ground, and dragged him outside where he sustained injuries; June gave up the dog under duress; and Schenck testified about the events on the basis of the police report at a hearing about the dog. ECF No. 29-1 at 5. Plaintiffs filed a complaint against Defendants with this Court, and then amended their complaint. ECF Nos. 1, 7. The Defendants filed motions to dismiss, ECF Nos. 12, 24, 27, which this Court granted in part and denied in part. ECF No. 52. Plaintiffs filed a SAC. ECF No. 53. In the SAC, Plaintiffs allege causes of action as follows:

(1) 42 U.S.C. § 1983, by all Plaintiffs against Desmidt, Stenquist, Schenck, Feinberg, McGriff, Supanich, Hussey, Collins, and Does 1-50, on the basis of the First Amendment rights to speak out, withhold consent to impound, and to film, the Fourth Amendment rights to be free from unreasonable searches and seizures, and from unreasonable force, and the Fourteenth Amendment right "not to be deprived of liberty or property without due process," *id.* ¶¶ 41-50;

(2) 42 U.S.C. § 1983, by all Plaintiffs against Belmont, San Mateo, PHS, Desmidt, Supanich, and Hussey for *Monell* and supervisory liability claims on the basis of failing to enact and execute policies, or to train on such policies, to avoid the aforementioned violations of their rights, *id.* ¶¶ 51-60;

(3) 42 U.S.C. § 1983, by all Plaintiffs against Desmidt, Stenquist, Schenck, Feinberg, McGriff, Supanich, Hussey, Collins, and Does 1-50 for the deliberate fabrication of evidence and investigation based on such evidence, *id.* ¶¶ 61-69;

(4) Malicious prosecution by Andrew against Desmidt, Stenquist, Schenck, Feinberg, McGriff, Supanich, Hussey, Collins, and Does 1-50 for investigating and charging Andrew by use of false allegations, *id.* ¶¶ 70-76;

(5) Cal. Const. Art. I, § 13, by all Plaintiffs against all Defendants and Does 1-50 for damages, *id.* ¶¶ 77-82;

4

(6) Cal. Civil. Code § 52.1(b) by all Plaintiffs against all Defendants and Does 1-50 for threatening or coercing Plaintiffs in order to interfere with the exercise of their rights under the United Sates and California constitutions, *id.* ¶¶ 83-87;

(7) Assault and battery by all Plaintiffs against all Defendants and Does 1-50, *id.* ¶¶ 88- 92;

(8) False arrest and imprisonment by Andrew and Paul against all Defendants and Does 1-50, *id.* ¶¶ 93-97;

(9) Negligence by all Plaintiffs against all Defendants and Does 1-50, *id.* ¶¶ 98-105;

(10) Invasion of privacy by all Plaintiffs against all Defendants and Does 1-50, *id.* ¶¶ 106-110; and

(11) Intentional infliction of emotional distress ("IIED") by all Plaintiffs against all Defendants and Does 1-50, *id.* ¶¶ 111-115.[2]

Plaintiffs seek damages, fees, and costs. *Id.* at 30.

Both groups of Defendants now move to dismiss Plaintiffs' complaint. ECF Nos. 54, 55. Plaintiffs oppose both motions. ECF Nos. 57, 58.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[2] Plaintiffs originally alleged claims for violations of Article I, § 13 of the California Constitution, but they have withdrawn those claims. ECF No. 57 at 18-19. They also originally alleged state law claims for assault, battery, false imprisonment, false arrest, and invasion of privacy against Officer Schenk, but they have withdrawn those claims also. ECF No. 58 at 10. Plaintiffs originally made the same state law claims against PHS, but because the sole factual basis for those claims was the allegations against Officer Schenk, the Court dismisses the same claims against PHS.

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citation omitted). In determining whether a plaintiff has met this plausibility standard, a court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Pro se pleadings must be liberally construed. *Farahani v. Floria*, No. 12-CV-04637-LHK, 2013 WL 1703384 at *7 (N.D. Cal. April 19, 2013); (citation omitted); *see also Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990) (holding that the court "has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements.").

## IV. DISCUSSION

Before discussing each claim individually, the Court addresses certain matters that affect the complaint as a whole or groups of claims within it.

First, the Court rejects the City and County Defendants' argument that June, Paul, and Chan's state law causes of action should be dismissed because Andrew's Tort Claim Act claim did not include them. ECF No. 54 at 29. The California Tort Claim Act requires the timely presentation of a claim to a public entity as a prerequisite to an action for money or damages. Cal. Gov't Code § 945.4; *Fall River Joint Unif. Sch. Dist. v. Sup. Court*, 206 Cal. App. 3d 431, 434 (1998); *Robinson v. Alameda Cty.*, 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012). In federal court, failure to allege facts that show compliance with the Tort Claims Act subjects a state law claim to dismissal. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). The City and County Defendants argue that Andrew's claim did not identify June, Paul or Chan by name, and only made clear that Andrew sought damages. ECF No. 54 at 30. As in its previous order, the Court concludes that Andrew's claim sufficiently put the City on notice of claims by June, Paul, and Chan, even though Andrew was the formal claimant, because it discussed the family's injuries. ECF No. 52 at 16; *Lacy v. City of Monrovia*, 44 Cal. App. 3d 152, 155 (1974) (finding a claim filed by a husband for police brutality related injuries to an entire family was sufficient for

6

claims by family members because it adequately put the city of notice of those family member's injuries). The City and County Defendants do argue persuasively, however, that Andrew's claim failed to put the County of San Mateo, as opposed to the City of Belmont, on notice. ECF No. 54 at 29. Andrew filed his claim only with Belmont. ECF No. 29-1. Accordingly, Plaintiffs' state law claims against San Mateo are dismissed under the Tort Claims Act. *See K.T. v. Pittsburg Unif. Sch. Dist.*, 219 F. Supp. 3d 970, 982 (N.D. Cal. 2016) (describing a functional approach to the Tort Claims Act, but still requiring a claim to be filed with the entity itself).[3]

Second, PHS and Schenck argue that they are not state actors, so they cannot be sued under Section 1983. A non-state actor may be sued under Section 1983 if a plaintiff adequately alleges that the non-state actor engaged in a task that was "both traditionally and exclusively governmental . . . or that the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant." *Burnell v. Marin Humane Soc'y*, No. 14-CV-05635-JSC, 2015 WL 4089844, at *3 (N.D. Cal. July 6, 2015) (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)). The Court concludes that Plaintiffs adequately allege such a relationship between PHS and Belmont. The SAC alleges that Belmont contracts with PHS to provide "state and local-mandated animal control services, including enforcement of laws that protect animals and people." SAC ¶ 10 (citing *Peninsula Humane Society*, Animal Rescue and Control, https://peninsulahumanesociety.org/arc/ (last visited Feb. 9, 2018)). Plaintiffs adequately plead a relationship wherein PHS and Schenck carried out governmental activities such that they may be considered state actors under Section 1983 at least at this initial stage.[4]

---

[3] Plaintiffs argue that San Mateo was adequately on notice because Andrew's tort claim listed as a responsible employee "San Mateo County Peninsula Humane Society & SPCA." ECF No. 57 at 19. However, Andrew did not file his claim with San Mateo, ECF No. 29-1, and San Mateo is a separate entity from the non-profit organization PHS. *See* Peninsula Humane Society, *About Us*, https://peninsulahumanesociety.org/about/. This reference insufficiently notified San Mateo of potential claims against it. *K.T.*, 219 F. Supp. 3d at 982.

[4] Non-state actors may also be sued under Section 1983 if a plaintiff adequately alleges an agreement to violate constitutional rights. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (explaining that to be liable, participants must share a common objective). Plaintiffs allege that Stenquist and Schenck met before the incident to discuss their plan to impound Plaintiffs' dog without a warrant. SAC ¶ 21. This allegation is also reflected in the police report attached to Andrew's criminal charge. ECF No. 57-2 at 7 (Feinberg explaining that Schenck and Stenquist met to discuss the plan to impound the dog); *id.* at 16 (Stenquist explaining that he met with

7

### A. First Amendment Claim

The City and County Defendants argue that Plaintiffs' First Amendment claims are not supported by facts in the complaint as to Andrew, June, and Paul. ECF No. 54 at 17. PHS and Schenck argue that Plaintiffs have not alleged any First Amendment claim against them. ECF No. 55 at 13.

The "First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To establish a Section 1983 First Amendment claim, a plaintiff must: (1) show that she engaged in a constitutionally protected activity; (2) show that the defendant's retaliatory action caused her to suffer an injury that would likely deter a person of ordinary firmness from engaging in that protected activity; and (3) ultimately prove that the defendants' desire to cause the chilling effect was a but-for cause of defendants' action. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-901 (9th Cir. 2008). A plaintiff must also show a causal connection between a defendant's retaliatory animus and the plaintiff's subsequent injury. *Hartman*, 250 U.S. at 259.

Plaintiffs do not allege any facts to support a First Amendment claim by June, nor do they argue in their opposition that such facts exist. ECF No. 57 at 10-11. June's First Amendment claim is dismissed. Plaintiffs argue that Andrew states a claim for two reasons. First, Plaintiffs argue that the entire incident occurred as retaliation for Andrew's refusal to voluntarily impound his dog. *Id.* As to this theory, it is not clear what speech Plaintiffs are trying to protect. The rights in question, if any, arise under the Fourth Amendment, not the First Amendment. *See Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), *as amended on denial of reh'g and reh'g en banc* (Nov. 23, 1994), *overruled on other grounds by Robinson v. Solano Cty.*, 278 F.3d 1007 (9th Cir. 2002) (holding that seizure and killing of dog is a cognizable claim under the Fourth Amendment). Second, Plaintiffs argue that Andrew was retaliated against for filming the incident, but the allegations in the SAC do not support this argument. ECF No. 57 at 11. The SAC alleges only that officers "hit Andrew's phone from his hand," but does not allege not that Andrew was

---

Schenck and the two planned to take the dog without a warrant, but with consent). Impounding a dog without a warrant may be unconstitutional. *See infra* Section IV.B.

engaged in First Amendment protected activity when these actions were taken, i.e., there is no allegation he was actually filming. SAC ¶ 32. *Fordyce v. City of Seattle*, 55 F.3d 436, 442 (9th Cir. 1995) (holding that filming is constitutionally protected activity). As to Paul however, the SAC alleges that Feinberg, McGriff, and Officers Doe ordered Paul to stop filming and arrested him "because he was filming." SAC ¶ 29. Paul states a First Amendment claim f against Feinberg, McGriff, and Officers Doe. Chan also states a First Amendment claim against Officers Doe for similar conduct (Defendants do not contend otherwise). All other First Amendment claims against the City and County Defendants are dismissed. Moreover, Plaintiffs do not allege any facts to show that Schenck or PHS interfered with Plaintiffs' First Amendment rights. Plaintiffs' First Amendment claims against PHS and Schenck are dismissed.

### B. Fourth Amendment Claim

The City and County Defendants argue that the SAC fails to state a Fourth Amendment claim against Hussey and Collins. ECF No. 54 at 17. The SAC alleges only that Hussey and Collins failed to intervene, and failed to activate their body cameras. SAC ¶¶ 30-31. Plaintiffs argue that it is "premature" to dismiss Plaintiffs' claims against Hussey and Collins because discovery will reveal that they are the Officers Doe referenced in the SAC. ECF No. 57 at 11-12. The possibility that discovery might later show that someone committed a tort, by itself, is not enough to require them to defend a lawsuit. *Iqbal*, 566 U.S. at 678 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Accordingly, Plaintiffs' Fourth Amendment claims against Hussey and Collins are dismissed.

PHS and Schenck argue that Plaintiffs fail to state a claim for Fourth Amendment violations against them. ECF No. 55 at 14. The SAC does not allege any searches, seizures, or unlawful uses of force by Schenck, and only alleges that Schenck failed to "intervene" when other officers carried out such actions. SAC ¶ 27.

The SAC does, however, allege that Schenck planned to, and attempted to, impound Plaintiffs' dog without a warrant. *Id.* ¶ 21. The SAC also alleges that after Andrew declined to consent to the impoundment, BPD Officers beat and arrested members of the family. Schenck then demanded that June consent to the impoundment through "intimidation, threat of force, and

9

threat of arrest," and she did so. *Id.* ¶ 35. The Ninth Circuit has recognized that the police shooting of a dog is a seizure under the Fourth Amendment, because the destruction of property is a meaningful interference with one's rights. *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 978 (9th Cir. 2005) (recognizing that the unnecessary police shooting of a dog can be a Fourth Amendment violation); *Fuller*, 36 F.3d at 68; *see also Mallard v. City of Clearlake*, No. 04-1246 MMC, 2004 WL 2623902, at *2 (N.D. Cal. Sept. 23, 2004) (recognizing that wounding and then impounding a dog can be a Fourth Amendment violation); *Scott v. Jackson Cty.*, 403 F. Supp. 2d 999, 1008 (D. Or. 2005), *aff'd in part, rev'd in part*, 297 F. App'x 623 (9th Cir. 2008) (holding that the impounding of rabbits did not violate the Fourth Amendment). The Court has not uncovered, nor have the parties pointed the Court to, any Ninth Circuit cases explicitly applying the Fourth Amendment to the impounding of a dog by an animal control officer. State and district court cases in California, have, however recognized such rights. For example, in *Conway v. Pasadena Humane Soc'y*, 45 Cal. App. 4th 163, 176 (1996), the court concluded that the Fourth Amended protected homeowners from a warrantless search of their home and seizure of their dog. Likewise in *In re Quackenbush*, 41 Cal. App. 4th 1301, 1308 (1996), *as modified on denial of reh'g* (Feb. 13, 1996), the court concluded that the Fourth Amendment protected against the warrantless seizure of a dog because that seizure meaningfully interfered with the plaintiff's possessory interests in the dog. *See also Jackson v. Silicon Valley Animal Control Auth.*, No. C 07-5667 RS, 2008 WL 4544455 (N.D. Cal. Oct. 2, 2008) (concluding that exigent circumstances exception extended to warrantless entry to search and seize animals).

The Court concludes that at least at the motion to dismiss stage, June and Andrew state Fourth Amendment claims against Schenck for his efforts to seize their dog without a warrant. While June ultimately consented to the seizure, the complaint adequately alleges that she did so under duress. *See United States v. Atkins, No. 15-CR-00506-BLF-1*, 2017 WL 2652873, at *13 (N.D. Cal. June 19, 2017) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)) (concluding that whether consent was voluntary is a factual question to be determined through the totality of the circumstances based on factors including whether the plaintiff was told a search

10

warrant could be obtained); *Page v. Prunty*, No. C-96-0043 EFL, 1996 WL 743807, at *3 (N.D. Cal. Dec. 13, 1996), *aff'd*, 145 F.3d 1340 (9th Cir. 1998) ("Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.").

## C. Fourteenth Amendment Claim

The City and County Defendants, and PHS and Schenck, argue that Plaintiffs fail to state Fourteenth Amendment claims because any constitutional violations are more specifically addressed under their First and Fourth Amendment claims. ECF Nos. 54 at 21; 55 at 14. The Court concludes that the constitutional violations for which the Plaintiffs seek redress are better addressed under the Fourth and First Amendment. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment . . . must be the guide for analyzing these claims.") (internal citation omitted). Plaintiffs' Fourteenth Amendment claims are dismissed.

## D. Supervisory Liability Claim against Desmidt

The City and County Defendants argue that Plaintiffs fail to state a claim for supervisory liability against Desmidt. ECF No. 54 at 19. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Id.* Supervisors may be liable "under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal citation omitted). "A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor can be liable . . . for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a

11

reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). The SAC alleges only that as police chief, Desmidt was the "final policy making official for the BPD." SAC ¶ 7(a). While the SAC alleges several potential failures to follow policy by individual officers, *see, e.g.*, *id.* ¶ 23 (alleging Stenquist's failure to wear a body camera), the SAC fails to connect any such violations to Desmidt. Plaintiffs do not sufficiently plead a supervisory liability claim against Desmidt, and the claim is dismissed.

### E. *Monell* Claim

The City and County Defendants argue that Plaintiffs fail to state a claim for municipal liability under *Monell v. New York City Dep't Social Servs.*, 436 U.S. 658, (1978). ECF No. 54 at 20. PHS also argues that Plaintiffs fail to state a *Monell* claim against it. ECF No. 55 at 14.

A government entity may be liable for a Section 1983 violation only if a "policy or custom" of the entity was a moving force behind the alleged constitutional violation. *Monell*, 436 U.S. at 694. "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). A plaintiff seeking to establish *Monell* liability can show either: (1) an unconstitutional custom or policy behind the violation of rights, (2) a deliberately indifferent omission, such as failure to train, or (3) a final policy-maker's involvement in, or ratification of, the conduct underlying the violation. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th. Cir. 2010).

Failure to train government employees may constitute a sufficient policy under *Monell* if the failure constitutes "deliberate indifference," or "reflects a 'deliberate' or 'conscious' choice" by the government entity. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (citation omitted). A failure to supervise that is "sufficiently inadequate" may amount to "deliberate indifference." *Davis v. City of Ellensberg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or

12

supervision does not give rise to a *Monell* claim, however – the need to train must be "obvious." *Dougherty*, 654 F.3d at 900. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal citation omitted).

The City and County Defendants accurately characterize Plaintiffs' SAC as asserting in general terms that "various policies existed that proximately caused plaintiffs' alleged injuries." ECF No. 54 at 22; SAC ¶ 53 (alleging "supervisors disregarded the consequences of a policy deficiency that they knew or had reason to know would proximately cause the violation of Plaintiffs' constitutional rights"). This allegation is insufficient. Plaintiffs do not, for example, offer any allegations as to why the claimed violations of their constitutional rights were "patently obvious" to Belmont or San Mateo as a consequence of their failure to train, or why their failure to train amounted to "deliberate indifference." *See City of Canton*, 389 U.S. at 390 n.10. Plaintiffs also do not explain how officials "ratified" the constitutional violations, other than through knowledge of Plaintiffs' claims against officers after the incident occurred. *See Clouthier*, 591 F.3d at 1249-50. While the SAC lists several failures to implement or execute policies which led to the violation of Plaintiffs' rights, *see, e.g.*, SAC ¶ 54(f) (alleging a failure to institute or enforce "readily available procedures for neutralizing and de-escalating a high-intensity situation"), it fails to allege other instances of these violations. *Sternberg v. Town of Danville,* No. 15-cv-01878-SI, 2015 WL 9024340 at *5 (N.D. Cal. Dec. 16, 2015) (simply alleging "the existence of . . . a pattern or practice" only "recites the elements of a *Monell* claim and is plainly insufficient"). Likewise, the SAC does not state any policy, ratification, series of events, or failure to train by PHS. ECF No. 55 at 15; ECF No. 58 at 7; *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (concluding that *Monell* applies to private actors acting under color of state law). Accordingly the *Monell* claim is dismissed as to all Defendants.

### F. *Devereaux* Deliberate Fabrication Claim

The City and County Defendants, and PHS and Schenck, argue that Andrew fails to state a claim for liability under *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001). ECF Nos. 54 at 26; ECF No. 55 at 15. In *Devereaux*, the Ninth Circuit recognized that "there is a clearly established

13

constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." 263 F.3d at 1074-75. To plead a claim under *Devereaux*, the plaintiff must: (1) identify the evidence alleged fabricated; and (2) state facts showing that the fabrication was deliberate. *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015). Deliberate fabrication can be shown directly, where the defendant reported information known to be false. *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111-12 (9th Cir. 2010). Deliberate fabrication can also be shown by circumstantial evidence that defendants either: (1) continued an investigation of the plaintiff "even though [they] knew or should have known that [he] was innocent;" or (2) "used investigative techniques that were so coercive and abusive that [they] knew or should have known that those techniques would yield false information." *Bradford*, 803 F.3d at 386 (quoting *Devereaux*, 263 F.3d at 1076). Conclusory allegations will not suffice. *Trulove v. City & Cty. of San Francisco*, No. 16-050-YGR, 2016 WL 5930634, at *6 (N.D. Cal. Oct. 12, 2016).

Andrew adequately states a fabrication claim against Supanich. He alleges that Supanich included "his own perjured statements" in the police report used to charge Andrew, which suggests direct evidence of specific fabrication, namely Supanich's specific statements in the police report, *see, e.g.*, ECF No. 57-2 at 13, and that Supanich reported information he knew was false, *id*; *Costanich*, 627 F.3d at 1111-12.

As to other defendants, however, his claims fail to identify specific fabricated evidence. Andrew alleges that Stenquist and Schenck, for example, "deliberately fabricated evidence of Andrew's alleged assault on an officer," but do not identify what specific evidence the officers fabricated. SAC ¶ 63. Likewise, Andrew alleges that "Feinberg prepared and wrote the police report based on a false allegation and containing perjured testimony, omissions, and material misrepresentations made by Stenquist, Schenck, and Supanich, and approved by Supanich and Hussey, which caused the charges to be brought against Andrew," *id.* ¶ 38, but does not explain who made which statements, or which statements were perjured. *Id.* Moreover, Andrew makes only conclusory allegations that the Defendants "conducted a coercive and abusive investigation" and does not otherwise explain how or why any evidence was deliberately fabricated. *Id.* ¶¶ 64,

66. While Andrew alleges poor interview techniques, including handcuffing him "to a bar, visibly in pain" and denying him access to a translator, these tactics are not so clearly coercive and abusive that the officers "knew or should have known" they "would yield false information." *Id.* ¶ 38; *Bradford*, 803 F.3d at 386. Likewise, the SAC alleges that Schenck "lied" when he stated that Andrew had violent propensities and battered a police officer at an animal control hearing on May 26, 2015, however these statements did not result in Andrew's criminal charges on May 22, 2015. SAC ¶ 37. The Court concludes that Andrew fails to state a claim for *Deveraeux* liability for all Defendants except for against Supanich.

### G. Malicious Prosecution Claim

The City and County Defendants, and PHS and Schenck, argue that Andrew's state law claim for malicious prosecution was already dismissed with prejudice. ECF No. 54 at 27; ECF No. 55 at 16. The Defendants also argue that if Andrew's malicious prosecution claim arises under Section 1983, rather than state law, it is duplicative and should be dismissed. ECF No. 54 at 28. Plaintiffs explain that Andrew's malicious prosecution claim arises under Section 1983, but is not duplicative because a *Devereaux* claim arises under the Fourteenth Amendment, while malicious prosecution arises under the Fourth Amendment. ECF No. 57. The gravamen of Andrew's malicious prosecution claim is that his criminal proceedings "were predicated on a false allegation." SAC ¶ 70. While a claim for arrest without probable cause is properly brought under the Fourth Amendment, *Albright*, 510 U.S. at 271, a claim for prosecution based on falsified evidence arises under the Fourteenth Amendment, *Devereaux*, 263 F.3d at 1074-75. The Court dismisses Andrew's malicious prosecution claim under Section 1983 as duplicative of his *Devereaux* claim.

### H. Section 52.1 Claim

The City and County Defendants argue that the SAC contains no facts showing a violation under Cal. Civ. Code § 52.1 other than Andrew, Chan, and Paul's claims against Stenquist. ECF No. 54 at 29; ECF No. 55 at 13. To state a claim under Section 52.1, Plaintiffs must plead facts showing that the defendant threatened or used violence against a plaintiff as a consequence of the plaintiff exercising or attempting to exercise a right protected by the constitution. Cal. Civ. Code

§ 52.1(a); *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007); *Cabesuela v. Browning-Ferris Indus.*, 68 Cal. App. 4th 101, 111 (1998). In its previous order, the Court concluded that only Andrew, Paul, and Chan stated Section 52.1 claims against Stenquist because only those claims included allegations of violence as a result of the exercise of constitutional rights. ECF No. 52 at 18-19. The allegations in the SAC regarding these claims are substantially the same as in the prior complaint, and the Court makes the same ruling here.[5]

### I. Assault and Battery Claim

The City and County Defendants argue that Plaintiffs fail to state claims for assault and battery, other than claims by Andrew and June against Stenquist, and by Andrew against Supanich, McGriff, Hussey and Collins. ECF No. 54 at 31.

Although lumped together in the complaint, ECF No. 53 at 25, assault and battery are different claims. To state a claim for assault, Plaintiffs must plead facts showing that (1) a defendant acted with intent to cause harmful or offensive contact, or threatened to touch a plaintiff in a harmful or offensive manner, (2) the plaintiff reasonably believed he was about to be touched or the threat would come to pass, (3) the plaintiff did not consent and was harmed, and (4) defendant's act was a substantial factor in that harm. *So v. Shin*, 212 Cal. App. 4th 652, 668-69 (2013). Words alone do not amount to an assault. *Tromblinson v. Nobile*, 103 Cal. App. 2d 266, 269 (1951). To plead a claim for battery, Plaintiffs must plead facts showing that (1) a defendant touched a plaintiff with the intent to harm or offend, (2) that the plaintiff did not consent and was harmed, and (3) that a reasonable person would feel offended. *So*, 212 Cal. App. 4th at 669. Claims of battery against a police officer require a plaintiff to show that the officer used unreasonable force. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269 (1998). The Court concludes, as in its previous order, that Andrew states a battery claim against Stenquist for charging at him, June states an assault claim against Stenquist for pushing her to the ground twice, and Andrew states an assault claim against Supanich, Stenquist, Officers Doe, and McGriff for

---

[5] There is no indication in the SAC that Schenck threatened or enacted violence against any Plaintiff so the Court dismisses all Plaintiffs' Section 52.1 claims against PHS and Schenck. *See* Cal. Civ. Code § 52.1(a); *Austin B.*, 149 Cal. App. 4th at 883.

16

forcibly arresting and beating him.[6] The Court dismisses all other assault and battery claims.

### J. False Arrest and Imprisonment Claims

The City and County Defendants argue that Paul cannot state a claim for false arrest and imprisonment because Andrew's California Torts Claims Act claim does not allege any facts related to Paul's arrest or imprisonment. ECF No. 54 at 32; *see also* ECF No. 29-1 (CTCA claim). Defendants correctly characterize Andrew's CTCA claim, and the Court will accordingly dismiss Paul's false arrest and imprisonment claims for failure to comply with the CTCA. *See Moore v. City of Vallejo*, 73 F. Supp. 3d 1253, 1260 (E.D. Cal. 2014) (dismissing claim where allegations were "not adequately included in the Government Tort Claim" and there was "no mention of Decedent's disability or medical condition" which was the basis for that claim).

The City and County Defendants also argue that Andrew's claims for false arrest and imprisonment should be dismissed against all Defendants other than Supanich, Stenquist and McGriff. ECF No. 54 at 32-33. The Court agrees that the SAC only states false arrest claims against Supanich, Stenquist, McGriff, and Officers Doe. SAC ¶ 32. The Court dismisses Andrew's false arrest and imprisonment claims against all other defendants.

### K. Negligence Claim

The City and County Defendants argue that Plaintiffs fail to state a claim for negligence against Desmidt, Feinberg, McGriff, Hussey, and Collins. ECF No. 54 at 33. PHS and Schenck also argue that Plaintiffs fail to state a negligence claim against them. ECF No. 55 at 18. The elements of a negligence claim are "duty to use due care and breach of duty, which proximately causes injury." *Lopez v. City of Los Angeles*, 196 Cal. App. 4th 675, 685 (2011). "Absent a legal duty, any injury is an injury without actionable wrong." *J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 396 (2009). In its previous order, the Court concluded that Andrew stated a claim for negligence against Stenquist for charging at him, June stated a claim against Stenquist for pushing her twice, Andrew, Paul, and Chan stated a claim against Stenquist for waving his gun

---

[6] In it previous order, the Court declined to dismiss Andrew's claims against Stenquist, Supanich, McGriff, Hussey, and Collins for beating and arresting him, ECF No. 52 at 20, but in the SAC, Andrew alleges that Stenquist, Supanich, McGriff and Officers Doe forcibly arrested and beat him, SAC ¶ 32.

17

and threatening their arrest, and Andrew stated a claim against Stenquist, Supanich, McGriff, Hussey, and Collins for beating him. ECF No. 52 at 20-21. The allegations in the SAC are substantially similar, except that Andrew no longer claims that Hussey and Collins beat him. SAC ¶ 32 (alleging that Supanich, Stenquist, McGriff, and Officers Doe beat him). Accordingly, the Court concludes that Plaintiffs' claims for negligence are dismissed except for Andrew's claims against Stenquist, Supanich, McGriff and Officers Doe, June's claim against Stenquist, and Paul and Chan's claims against Stenquist.

### L. Invasion of Privacy Claim

The City and County Defendants argue that Plaintiffs' claims for invasion of privacy against Desmidt, Hussey and Collins should be dismissed. The Court previously concluded that Plaintiffs stated claims for invasion of privacy against Stenquist, Supanich, McGriff, Hussey and Collins. ECF No. 52 at 21-22. The SAC is substantially similar to the FAC, but now alleges that only Stenquist, Supanich, McGriff, and Officers Doe entered Plaintiffs' home offensively. SAC ¶ 32. Accordingly, Plaintiffs' invasion of privacy claims against Desmidt, Hussey, and Collins are dismissed.

### M. Intentional Infliction of Emotional Distress

The City and County Defendants, and PHS and Schenck, argue that Plaintiffs' IIED claims other than claims by Andrew, Paul and Chan against Stenquist should be dismissed. ECF No. 54 at 35. The elements of a prima facie case of IIED are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress." *Aquino v. Superior Court*, 21 Cal. App. 4th 847, 856 (1993). Outrageous conduct is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982).

The Court previously concluded that Andrew, Paul, and Chan stated claims for IIED against Stenquist, and that Andrew could state a claim against the officers who tackled and beat him. ECF No. 52 at 22-23. The SAC alleges that Supanich assaulted and "attempted to forcibly and violently extract" Andrew from the residence, Officers Doe beat at his body, and Supanich,

18

Stenquist, McGriff and Officers Doe pulled him out of the residence and applied "excessive force on him." SAC ¶ 32. Because Andrew alleges only that Stenquist and McGriff applied "excessive force," without additional detail, the Court cannot conclude that Andrew adequately pleads a claim for IIED against Stenquist and McGriff. The SAC states no "outrageous conduct" by PHS or Schenk. The Court concludes that in addition to Andrew, Chan, and Paul's claims for IIED against Stenquist on the basis of threatening their lives with a gun, ECF No. 52 at 22, Andrew states a claim for IIED against Supanich for assaulting him and violently extracting him from the home, and against Officers Doe for beating him. SAC ¶ 32. All other IIED claims are dismissed.

## CONCLUSION

For the aforementioned reasons, the Court grants in part and denies in part Defendants' motions to dismiss as follows:

(1) All Plaintiffs' California Constitution Article I, Section 13 claims against all Defendants are dismissed.

(2) All Plaintiffs' assault, battery, false imprisonment, false arrest, and invasion of privacy claims against Schenck and PHS are dismissed.

(3) All Plaintiffs' Section 52.1, assault, battery, false arrest, false imprisonment, negligence, invasion of privacy, and IIED claims against San Mateo are dismissed.

(4) All Plaintiffs' First Amendment claims are dismissed except for Paul's claims against Feinberg, McGriff and Officers Doe, and Chan's claims against Officers Doe.

(5) All Plaintiffs' Fourth Amendment claims against Hussey and Collins are dismissed. Chan and Paul's Fourth Amendment claims against Schenck are dismissed.

(6) All Plaintiffs' Fourteenth Amendment claims against all Defendants are dismissed.

(7) All Plaintiffs' supervisory liability claims against Desmidt are dismissed.

(8) All Plaintiffs' *Monell* claims against all Defendants are dismissed.

(9) Andrew's *Devereaux* claim against all Defendants, except for Supanich, is dismissed.

(10) Andrew's malicious prosecution claim against all Defendants is dismissed.

(11) June's Section 52.1 claim against all Defendants is dismissed. Andrew, Paul, and

Chan's Section 52.1 claims against all Defendants, except for Stenquist, are dismissed.

(12) All Plaintiffs' assault and battery claims against all Defendants, except for June's claim against Stenquist, and Andrew's claims against Supanich, Stenquist, Officers Doe, and McGriff, are dismissed.

(13) Paul's claims for false arrest and imprisonment against all Defendants are dismissed. Andrew's claims for false arrest and imprisonment against all Defendants, except for his claims against Supanich, Stenquist, McGriff, and Officers Doe, are dismissed.

(14) All Plaintiffs' claims for negligence against all Defendants, except for Andrew's claims against Stenquist, Supanich, McGriff, and Officers Doe, June's claim against Stenquist, and Paul and Chan's claims against Stenquist, are dismissed.

(15) All Plaintiffs' claims for invasion of privacy against Desmidt, Hussey, and Collins are dismissed.

(16) All Plaintiffs' claims for IIED against all Defendants, except for Andrew's claims against Supanich and Officers Doe, and Andrew, Chan, and Paul's claims against Stenquist, are dismissed.

Plaintiffs' First Amendment, Fourth Amendment, Fourteenth Amendment, *Monell*, supervisory liability, malicious prosecution, Section 52.1, assault and battery, false arrest and imprisonment, negligence, invasion of privacy, and IIED claims are dismissed with prejudice, as Plaintiffs have already had the opportunity to amend the complaint as to those claims. Fed R. Civ. P. 15(a); ECF No. 53. Plaintiffs' California Constitution Article I, Section 13, and fabrication of evidence claims, however, are dismissed without prejudice. Plaintiffs may file a third amended complaint within 21 days of the issuance of this order, but the complaint may not include any allegations against any new defendants, nor may it include any claims not discussed in this order, without leave of court.

**IT IS SO ORDERED.**

Dated: August 22, 2018

_____
JON S. TIGAR
United States District Judge

20